# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER VICK, et al., Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:25-cv-00739-DGK |
| FRESH GREEN, LLC, et al., and JOHN DOE DISPENSARIES 1–215, | ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER REMANDING CASE</u>

This is a putative class action. Missouri Plaintiffs Christopher Vick, Bridget Biersmith, Ryan Russell, Joshua Holman, and Jordan Damewood seek to certify a Plaintiff and a Defendant class and allege claims under Missouri law against seven Missouri marijuana dispensaries. Defendants removed the case from Jackson County to this Court pursuant to 28 U.S.C. § 1453(b), alleging federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). ECF No. 1.

Now before the Court is Plaintiffs' Renewed Motion to Remand. ECF No. 33. Plaintiffs challenge this Court's subject-matter jurisdiction under CAFA. Specifically, Plaintiffs argue their Second Amended Complaint, ECF No. 32, which redefines the putative class as "citizens of the State of Missouri," removes the minimal diversity required for CAFA jurisdiction and the Court must therefore remand. Defendants oppose remand, arguing citizenship is determined by the complaint operative at the time of removal and not based on Plaintiffs' post-removal Second Amended Complaint.

For the reasons discussed below, the motion is GRANTED. The Clerk of the Court is

directed to REMAND this case back to the Circuit Court of Jackson County, Missouri.

## Background

In November 2022, the people of Missouri voted to amend the Missouri Constitution to legalize the use of recreational, or "adult-use," marijuana for persons twenty-one years old or older. Mo. Const. art. XIV, sec. 2. In addition to legalizing recreational marijuana, the amendment created a state and local taxing regime for recreational marijuana sold at licensed dispensaries. As relevant here, "any local government" is allowed to impose a tax of up to three percent on recreational marijuana sales within its jurisdiction. *Id.*, sec. 2.6(5). "'Local government' means, in the case of an incorporated area, a village, town, or city and, in the case of an unincorporated area, a county." *Id.* sec. 2.2(12). The Missouri Supreme Court recently held that a Missouri county may not impose the three percent sales tax on recreational marijuana sold in incorporated areas of the county. *See Robust Missouri Dispensary*, *3, LLC v. St. Louis Cnty.*, No. SC 100898, 2025 WL 2053566, at *7 (Mo. July 22, 2025), *reh'g denied* (Nov. 4, 2025). Plaintiffs claim they were subjected to just such a tax.

Plaintiffs originally filed this putative class action in the Circuit Court of Jackson County, Missouri, on June 13, 2025. The original Complaint defined the Plaintiff class as "All persons who purchased marijuana products from a Missouri dispensary and were charged a 3% county sales tax that was later declared unconstitutional." ECF No. 1-1 at 7. It defined the Defendant class as "Missouri-licensed marijuana dispensaries that collected a 3% county sales tax from consumers at the point of sale during the relevant period." *Id.*

On August 20, 2025, Plaintiffs filed their First Amended Complaint to define the period for marijuana purchases covered by the class action as "from December 8, 2022 to the present." ECF No. 1-1 at 41. The Defendant class definition remained essentially unchanged. *See id.* at 43.

2

The First Amended Complaint also added named Plaintiffs and Defendants.  *See id.* at 37–39. Defendants removed the case to this Court on September 19, 2025.

After Defendants removed, Plaintiffs filed a motion to remand to Jackson County, Missouri, invoking an exception to CAFA jurisdiction, ECF No. 6, and a motion to stay proceedings pending the Court's ruling on remand, ECF No. 8.  The Court granted the motion to stay proceedings.  ECF No. 23.  The Court also stayed the motion to remand.  ECF No. 24.  While the Court found Plaintiffs had failed to satisfy their burden of showing that an exception to CAFA jurisdiction applied, it granted limited jurisdictional discovery as to Plaintiff class member citizenship.  *See* ECF No. 24 at 7–14.  The Court ordered the parties to file a joint proposal for discovery limited to Plaintiff class member citizenship.  The parties have done so.  ECF No. 28.

In the midst of this, Plaintiffs sought leave to file a Second Amended Complaint.  ECF No. 27.  On February 3, 2026, the Court granted the motion.  ECF No. 31.  The Second Amended Complaint amends the Plaintiff class definition again, defining the class as

> All persons **who, as of June 13, 2025, were citizens of the State of Missouri, and who,** during the period from December 8, 2022 to the present, purchased adult-use marijuana from any Defendant Dispensary in the state of Missouri and were charged and paid a 3% county-wide sales tax that has been held unconstitutional by the Missouri Supreme Court.

ECF No. 32 at ¶ 28 (emphasis in the original).  Plaintiffs' purpose in amending was to "refine[] and narrow[] the proposed class definition to ensure the case proceeds on the claims Plaintiffs actually intend to litigate."  ECF No. 27 at 1.  Plaintiffs also sought to avail themselves of the Supreme Court's recent decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, which held that federal jurisdiction depends on an amended complaint, which is the operative complaint, even when amendment comes after removal.  *Id.*; *see* 604 U.S. 22, 49 (2025) ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new

3

complaint says."). In other words, Plaintiffs sought amendment to remove the basis for federal jurisdiction under CAFA and thus secure remand to state court. After the Court granted the motion to amend and Plaintiffs filed their Second Amended Complaint, Plaintiffs promptly renewed their motion for remand, ECF No. 33. The renewed motion argues that the amended class definition destroys the minimal diversity required for CAFA jurisdiction and that the Court must therefore remand to state court.

The Second Amended Complaint, like the prior complaints, alleges unjust enrichment (Count I), money had and received (Count II), and violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq. (Count III).[1] They seek (1) certification of a Plaintiff class and a Defendant class, (2) declaratory relief as to Plaintiffs' rights under the Missouri Constitution regarding the 3% sales tax they paid, (3) injunctive relief barring Defendants from keeping or using funds they acquired from the 3% sales tax, (4) restitution of funds paid by Plaintiffs in the form of the 3% sales tax, (5) imposition of a constructive trust over refunds of the three percent sales tax made to Defendants by the Missouri Department of Revenue, (6) order for accounting, (7) damages, (8) interest, and (9) attorneys' fees and costs.

**Legal Standard**

If a case has been removed to federal court under CAFA, the "district court shall decline to exercise jurisdiction," § 1332(d)(4)(A), if "one of CAFA's express jurisdictional exceptions applies." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). The party seeking remand must make this showing by a preponderance of the evidence. *See Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015). When a district court has jurisdiction under

---

[1] In Counts IV, V, and VI, Plaintiffs seek declaratory and injunctive relief, constructive trust, and accounting. These are remedies and not causes of action; indeed, Plaintiffs also list them in their prayer for relief. The Court therefore treats the Complaint as alleging the three claims given as Counts I, II, and III.

4

§ 1332(d)(2)'s minimal-diversity and amount-in-controversy requirements, § 1332(d)(4)(A) requires the court, under the "local-controversy exception," "to decline to exercise jurisdiction" if (1) more than two-thirds of the proposed plaintiff class "are citizens of the State in which the action was originally filed," (2) at least one defendant "from whom significant relief is sought" is a citizen of that State, (3) the "principal injuries" occurred in that State, and (4) no similar class action has been filed on behalf of the same or other persons against any of the defendants. The statute's "home-state exception" similarly requires the district court to decline to exercise jurisdiction if at least two-thirds of the plaintiff class and the primary defendants are citizens of the state in which the claim was filed. 28 U.S.C. § 1332(d)(4)(B).

## Discussion

As a preliminary matter, Plaintiffs' renewed motion for remand argues that even minimal diversity is absent now that the Second Amended Complaint confines the Plaintiff class to Missouri citizens. Plaintiffs have not, however, confined the Defendant class to Missouri citizens. *See* ECF No. 32 at 9 (defining Defendant class as "state-licensed marijuana dispensaries operating in Missouri"). The Court does not, therefore, find that minimal diversity is lacking. However, as the Court found in its order staying remand, Plaintiffs have satisfied the CAFA exception elements for defendant citizenship. *See* ECF No. 24 at 8. The Court therefore considers the renewed motion for remand under the "local-controversy" and "home-state" exceptions, 28 U.S.C. §§ 1332(d)(4)(A) and (B).

The only issue here is whether the Court must determine CAFA jurisdiction based on Plaintiffs' Second Amended Complaint or on the complaint that was operative at the time of removal, that is, Plaintiffs' First Amended Complaint. If the Second Amended Complaint, which limits the Plaintiff class to Missouri citizens, determines jurisdiction, then remand is mandatory,

5

because an exception to CAFA applies and the Court must decline jurisdiction under § 1332(d)(4). If the First Amended Complaint determines jurisdiction, then the Court returns to the parties' proposal for limited jurisdictional discovery as to Plaintiff class member citizenship.

I.  **Plaintiff's Second Amended Complaint, as the operative complaint, determines the Court's jurisdiction under *Royal Canin*.**

Plaintiffs argue the Supreme Court's recent decision in *Royal Canin*, affirming the Eighth Circuit, requires the Court to look to the Second Amended Complaint, which is now the operative complaint, to determine jurisdiction. Defendants argue *Royal Canin*'s rule does not extend to CAFA, that controlling Eighth Circuit CAFA caselaw is unchanged by *Royal Canin*, and that the Court must therefore determine jurisdiction based on the complaint that was operative at the time of removal, the First Amended Complaint.

Defendants rely on *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783 (8th Cir. 2012) and *Hargett v. RevClaims, LLC*, 854 F.3d 962 (8th Cir. 2017).[2] In *Hargis*, the class action proponent amended her complaint after removal to federal court by redefining the class as "only Missouri plaintiffs" in an apparent attempt to avoid CAFA's $5 million amount-in-controversy requirement and so achieve remand to state court. 674 F.3d at 789. The Eighth Circuit found that the proponent's "original complaint"—not the amended complaint—"control[led the amount-in-controversy] determination, as it was the operative complaint at the time of removal." *Id.* at 789–90. *Royal Canin* distinguished amendments to amount-in-controversy allegations, which, under *St. Paul Mercury*, do not normally destroy diversity jurisdiction, from other amendments to "the plaintiff's selection of claims and parties," which can. *See Royal Canin*, 604 U.S. at 38 n.8 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 292 (1938). So *Hargis* is not

---

[2] *See also In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101–02 (2d Cir. 2015) (holding that "'jurisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations'") (quoting *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380–81 (7th Cir. 2010) (per curiam)).

6

on point here. *Hargett*, by contrast, is. There, the Eighth Circuit refused to consider a complaint amended to redefine a class "as . . . only . . . Arkansas citizens" after removal. 854 F.3d at 965, 966. As the Eighth Circuit observed, "the concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction." *Id.* at 967.

Defendants follow the observation in *Hargett* concerning § 1332(d)(7) and argue that the statute "locks in citizenship" once a pleading establishes CAFA jurisdiction. That means, if removal was proper on the First Amended Complaint—and the Court held it was, ECF No. 24 at 7—then the First Amended Complaint established federal jurisdiction and citizenship is determined as of the date of the filing of that complaint, not the Second Amended Complaint.

Plaintiffs respond that, to the extent the cited Eighth Circuit cases support Defendants' position, they must yield to the Supreme Court's rule in *Royal Canin* that jurisdiction is determined based upon the operative pleading, even if that pleading is one that was amended after removal to federal court. Plaintiffs also point to a recent Ninth Circuit opinion that applied *Royal Canin* to CAFA and held "*Royal Canin*'s rule also governs when a plaintiff amends their class complaint and excises the claims necessary for CAFA's minimal diversity standards to apply," *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 620 (9th Cir. 2025).

To Defendants' statutory argument, Plaintiffs reply that § 1332(d)(7) is a timing rule for measuring the citizenship of a class member, not a rule that freezes a class action in place once a federal court has jurisdiction. For Plaintiffs, this means that, under the Second Amended Complaint, anyone who was a citizen of Missouri on June 13, 2025, the date the original complaint was filed, is a member of the class, not that the class definition on June 13, 2025, (or on the date

of removal as Defendants argue) was fixed, along with its jurisdictional consequences.

Defendants' argument that *Royal Canin*'s rule does not apply to CAFA is unavailing. True, *Royal Canin* addressed the issue of amended complaints and jurisdiction in the context of supplemental jurisdiction under § 1367 and not under CAFA. But "[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion [i.e., "the well-established rationale" and "explications of the governing rules of law"] necessary to that result" that bind courts. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) (citations omitted). *Royal Canin* itself explains the reach of its logic,[3] and nothing in the opinion indicates that its holding is limited to the federal question/supplemental jurisdiction context. To the contrary, the Supreme Court explained that its holding in *Royal Canin* "accords with Congress's usual view of how amended pleadings can affect jurisdiction" and gives CAFA as an example of how an "'amended complaint' in a proposed class action may create '[f]ederal jurisdiction.'" *Royal Canin*, 604 U.S. at 34 (citing § 1332(d)(7)). Moreover, *Royal Canin* makes clear that its rule applies to changes to federal jurisdiction, not simply to its creation: "In such statutes [including CAFA], Congress conceives of amendments as having the potential to alter jurisdiction." *Id.* Indeed, in *Royal Canin* itself the amended complaint destroyed federal jurisdiction by removing the federal claims.[4] Moreover, the

---

[3] *See, e.g.*, 604 U.S. at 38–39 ("The uniformity of [the] principle [that "federal jurisdiction—or its absence—follows the amended complaint], as between original and removed cases, is not surprising. The appropriateness of federal jurisdiction—or the lack thereof—does not depend on whether the plaintiff first filed suit in federal or state court. Rather, it depends, in either event, on the substance of the suit—the legal basis of the claims (federal or state?) and the citizenship of the parties (diverse or not?). (That focus on substance is indeed why original jurisdiction and removal jurisdiction generally mirror each other in scope. See § 1441(a).) So in a removed no less than in an original case, the rule that jurisdiction follows the operative pleading serves a critical function. It too ensures that the case, as it will actually be litigated, merits a federal forum.").

[4] Indeed, the parties opposing what would become *Royal Canin*'s rule argued that the rule would allow post-removal amendments to class action complaints to defeat removal jurisdiction. *See* Brief for Petitioners, ROYAL CANIN U.S.A., INC. and Nestle Purina PetCare Company, Petitioners, v. Anastasia WULLSCHLEGER and Geraldine Brewer, Respondents., 2024 WL 3207351, at *35. This was, of course, an argument against the rule, but the observation is correct.

Supreme Court recognized that an amended complaint can destroy diversity jurisdiction in a removed case: "So if . . . joinder [of a non-diverse party] occurs after removal, the federal court must remand the case to the state court it began in." *Id.* at 38 (citing § 1447(e)).

In sum, the rule that "[f]ederal courts look to the amended complaint to determine jurisdiction . . . operates in federal-question cases and diversity cases, both to destroy and to create jurisdiction. And it cannot give way . . . just because the case was removed from state to federal court." *Id.* at 43. Nothing in *Royal Canin* says that CAFA, as a species of diversity jurisdiction,[5] remains outside of its rule. And the binding rationale of *Royal Canin* dictates that it does not.

Defendants' argument that § 1332(d)(7) compels a contrary result unique to CAFA cases is likewise unavailing. The statute reads

> Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

Defendants argue that once a pleading establishes CAFA jurisdiction, citizenship is "lock[ed] in" "and [l]ater amendments cannot undo that determination." Defendants seem to mean that a class definition—with its jurisdictional consequences—is "locked in" once CAFA jurisdiction is established so that a plaintiff cannot amend the class definition after CAFA removal, or at least that an amendment cannot affect jurisdiction. But § 1332(d)(7) speaks of the citizenship of the members of the class, not the class definition; neither does it prescribe rules for removal or remand.

The first clause refers to complaints that are subject to federal jurisdiction from the outset and simply affirms that a basic principle of diversity jurisdiction applies to CAFA, namely, that

---

[5] *See* S. Rep. 109-14, at 1, *reprinted in* 2005 U.S.C.C.A.N. 3, at 3 (CAFA was passed "to allow the application of the principles of federal diversity jurisdiction to interstate class actions."); *In Touch Concepts, Inc. v.*, 788 F.3d at 102 ("CAFA is, after all, an amendment to the diversity statute. And CAFA is found in the section of the U.S. Code that describes diversity jurisdiction." (citations omitted)).

the citizenship of a class member for purposes of diversity is fixed at the time of filing or amendment and does not change if that class member happens to change state citizenship later. *See Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (noting "the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile"). The clause presupposes that an amendment could change the outcome of the citizenship determination, for there would be no reason to direct a court to the amended complaint in § 1332(d)(7) if nothing about citizenship could change after the filing of the initial complaint. And because an individual class member's post-filing change of citizenship—following the general rule—can't change a court's "well founded" diversity jurisdiction, the only thing that could change the citizenship determination of class members upon amendment is a change to the class definition, i.e., a change to who the class members are.

The second clause recognizes that a state class action could be amended so that it comes under federal jurisdiction after amendment and thus fixes the citizenship of class members for purposes of diversity upon the attainment of federal jurisdiction, so that, again, the district court would retain jurisdiction even if class members change state citizenship after removal. This does not prohibit a plaintiff from amending a complaint to change the class definition after removal so that different people with different citizenships are members of the class and thus ultimately destroy diversity. This is no different from adding or removing parties for the same purpose. *See Royal Canin*, 604 U.S. at 38 ("[I]f . . . joinder [of a non-diverse party] occurs after removal, the federal court must remand the case to the state court it began in.").

Section 1332(d)(7) thus illustrates the difference between "the state of things" and the "alleged state of things," as the Eighth Circuit explained these concepts in its *Royal Canin* opinion. *See Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923 (8th Cir. 2023), *aff'd*, 604 U.S.

22 (2025). "The 'state of things,' which is subject to the time-of-filing rule, refers to the actual facts on the ground. Suppose, for example, that one party destroys diversity by moving to another state after filing. This change to the 'state of things' does not destroy diversity jurisdiction, even if living in that state from the beginning would have." *Id.* The "alleged state of things" is different. "[A] plaintiff can add a federal claim after removal to cure a lack of subject-matter jurisdiction, or replace a diverse defendant with a non-diverse one to divest the district court of jurisdiction. The facts on the ground have not changed, but the facts in the complaint have." *Id.* (cleaned up). Because "an amended complaint supersedes an original complaint, these changes [to the alleged state of things] can create or destroy federal jurisdiction." *Id.* (cleaned up).

As applied to a class action under CAFA, the citizenship of members of the class as defined by the complaint is established at the time the complaint (or amended complaint) is filed indicating the existence of federal jurisdiction. If class members change domicile and destroy CAFA diversity after removal, the district court retains jurisdiction. This is only a change in "the state of things." However, if the complaint is amended after removal to change the class definition—that is, "the alleged state of things"—and that new definition destroys CAFA diversity because, say, the Plaintiff class is now limited to citizens of the state where the alleged injuries occurred and the other elements of a CAFA exception are present, then the district court can no longer hear the case under § 1332(d)(4), because this "amended complaint supersedes [the] original complaint."[6]

---

[6] CAFA's purposes, as articulated by the Senate Judiciary Committee, and the broader statutory context of § 1332(d)(7) confirm this result. *See Westerfeld*, 621 F.3d at 824 ("While the starting point for interpreting a statute is the language of the statute itself, federal courts engaging in statutory construction must interpret the words of the statute in light of the purposes Congress sought to serve." (cleaned up)); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context.").

Purpose and context make clear that the statute is concerned with pre-removal amendments that were calculated to help plaintiffs evade removal of genuinely federal class actions under the pre-CAFA timing system. To further CAFA's purpose of "plac[ing] the determination of more interstate class action lawsuits in the proper forum–the federal courts," S. Rep. 109-14, at 5, Congress designed the CAFA time-of-filing and removal rules to prevent pre-

11

Nothing in CAFA precludes class action plaintiffs from making post-removal amendments to excise the basis for federal jurisdiction and so compel remand. Section 1332(d)(7) thus fits neatly within *Royal Canin*'s rule. Under *Royal Canin*, then, the Court looks to the operative complaint in this case, Plaintiffs' Second Amended Complaint, to determine jurisdiction.

## II. Plaintiffs have shown that a CAFA exception applies.

In its stay-of-remand order, the Court found that Defendants properly removed the case under CAFA. ECF No. 24 at 5–7. The question is therefore whether an exception to CAFA jurisdiction applies to the Second Amended Complaint.

Under the "local-controversy exception," the Court must "decline to exercise jurisdiction"

---

removal manipulation (i.e., evasion) of federal jurisdiction, not post-removal amendments that excise the basis for federal jurisdiction. As the Committee explained,

> subsection 1332(d)(7) clarifies that the citizenship of members of proposed classes would be determined as of the date the action was filed. Thus, questions about whether two-thirds of the members of a proposed class were citizens of a particular state would be determined as of that date. The only exception is where the original complaint does not indicate the existence of federal jurisdiction and plaintiffs later serve paper (particularly an amended complaint) that creates such citizenship or makes it evident. Then, consistent with the approach in existing section 1446(b), the "snapshot" of class membership citizenship is taken as of the date on which that new paper is served.

S. Rep. 109-14, at 44. As the Committee goes on to explain, the purpose of this timing rule is to "allow[] class actions to be removed at any time when changes are made to the pleadings that bring the case within section 1332(d)'s requirements for federal jurisdiction." *Id.*, at 50. Thus, the normal "1-year limitation under section 1446(c)(1)" for removal does not apply to class actions. § 1453(b). "This change is intended to prevent attorneys from engaging in the type of gaming that occur[ed] under the [then-]current class action system." S. Rep. 109-14, at 50. For example, class action plaintiffs may try to "evad[e] federal jurisdiction by hiding the true nature of their case," *id.*, at 9, by filing suit against a "friendly defendant," who agrees not to remove to federal court, thus "triggering the start of the one-year limitation" on removal, and then, "one year and one day after filing suit . . . serv[ing] an amended complaint on an additional defendant, at which time it would be too late for that new defendant to remove the case to federal court—regardless of whether diversity jurisdiction exists," *id.* at 50. Section 1332(d)(7)'s citizenship-timing provision, in conjunction with § 1446(b)(3), prevents this gamesmanship by making an action continually removable within thirty days of a defendant's "receipt . . . of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable," § 1446(b)(3). This also prevents a similar gaming of the system when plaintiffs "dismiss[] non-diverse parties . . . after the one-year deadline [to evade removal]." S. Rep. 109-14, at 50.

Thus, "[b]y allowing class actions to be removed at any time when changes are made to the pleadings that bring the case within section 1332(d)'s requirements for federal jurisdiction, this provision will ensure that such fraudulent pleading practices can no longer be used to thwart federal jurisdiction." *Id.* So, no matter when a plaintiff amends his class action complaint and makes his case removable by, for example, adding or removing parties, the defendant will have thirty days to remove. Sections 1332(d)(7) and 1446(b)(3) prevent plaintiffs from waiting to create a basis for federal jurisdiction until a time when defendants can no longer remove to federal court.

if (1) more than two-thirds of the proposed plaintiff class "are citizens of the State in which the action was originally filed," (2) at least one defendant "from whom significant relief is sought" is a citizen of that State, (3) the "principal injuries" occurred in that State, and (4) no similar class action has been filed on behalf of the same or other persons against any of the defendants. § 1332(d)(4)(A). The statute's "home-state exception" similarly requires the district court to decline to exercise jurisdiction if at least two-thirds of the plaintiff class and the primary defendants are citizens of the state in which the claim was filed. § 1332(d)(4)(B).

In its stay-of-remand order, the Court found that the only deficiency in Plaintiffs' argument for remand under a CAFA exception was its showing of the citizenship of the members of the proposed class. *See* ECF No. 24 at 7–12. Plaintiffs' First Amended Complaint did not limit class members to citizens of Missouri. Under the circumstances, the Court could thus not find by a preponderance of the evidence that more than two-thirds of the proposed class were citizens of Missouri. *Id.* at 9–12. Now that Plaintiffs have amended their complaint to limit the class to "citizens of the State of Missouri," ECF No. 32 at 7, the Court finds that more than two-thirds— indeed all—of the Plaintiff class are citizens of the state in which the claim was filed.

Because Plaintiffs have already satisfied the other elements of §§ 1332(d)(4)(A) and (B), CAFA's exceptions apply, and the Court cannot hear this case.

### Conclusion

For the reasons discussed above, Plaintiffs' motion is GRANTED. The Clerk of the Court is directed to REMAND this case back to the Circuit Court of Jackson County, Missouri.

**IT IS SO ORDERED.**

Date:   June 3, 2026              /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT

13